GREENMOOR, INC., Appellee

v.

BURCHICK CONSTRUCTION
COMPANY, INC.,
Appellant.

Superior Court of Pennsylvania.

Argued June 21, 2006.
Filed Sept. 11, 2006.

Robert A. King, Pittsburgh, for appellant.

Thomas C. Gricks, III, Canonsburg, for appellee.

BEFORE: BOWES, PANELLA and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Burchick Construction Company, Inc. (Burchick), appeals from the grant of injunctive relief entered on September 20, 2005, in the Court of Common Pleas of Washington County, in favor of Greenmoor, Inc. (Greenmoor). Upon review, we reverse.

¶ 2 The relevant facts and procedural history of this case are as follows: Burchick is the general contractor with the United States General Services Administration (GSA) for the renovation of the Moorhead Federal Building in downtown Pittsburgh, Pennsylvania. In June 2004, Greenmoor subcontracted with Burchick to perform the asbestos removal and abatement component of the renovation project. Greenmoor executed five contracts with Burchick; one contract for each of the five phases of the asbestos removal and abatement project. Greenmoor completed Phase I of the project, but Burchick was dissatisfied with Greenmoor's performance on the project. Accordingly, during Phase II of the project, Burchick terminated Greenmoor from the project. Greenmoor disputed its termination with Burchick and asserted that the termination was Burchick's means of retaliating against Greenmoor for a prior dispute between the two companies. Burchick notified Greenmoor of its termination on March 4, 2005.

¶ 3 On April 29, 2005, Greenmoor initiated suit against Burchick by filing a multi-count complaint that requested, *inter alia*, preliminary injunctive relief. Greenmoor's request for preliminary injunctive relief asked the trial court to en-

ter an order requiring Burchick to reinstate Greenmoor to the asbestos removal and abatement project, restraining Burchick from dismissing Greenmoor from the renovation project, and assessing Greenmoor's costs and attorney's fees against Burchick. The trial court conducted hearings on Greenmoor's request for preliminary injunctive relief on September 1 and September 6, 2005. On September 20, 2005, the trial court granted Greenmoor's request for preliminary injunctive relief. The trial court's September 20, 2005 order required Burchick to reinstate Greenmoor to work on Phases III–V of the asbestos removal and abatement and restrained Burchick from terminating Greenmoor from Phases III–V of said project.[1] The trial court's September 20, 2005 order also required Burchick to post a $200,000.00 bond with the Washington County Prothonotary.

¶ 4 Burchick filed a timely notice of appeal to this Court from the trial court's September 20, 2005 order. Thereafter, the trial court ordered Burchick to file a concise statement of matters complained of on appeal. Burchick complied with the trial court's order and filed the concise statement in a timely fashion.[2] Thereafter, the trial court authored an opinion that addressed the issues presented in Burchick's concise statement.

¶ 5 Burchick presents the following issues for our review:

1. Whether the trial court erred as a matter of law and abused its discretion through the misallocation and elimination of Greenmoor's heavy evidentiary burden of proof under Pennsylvania law for the issuance of a mandatory preliminary objection?

2. Whether the trial court erred as a matter of law and abused its discretion where no reasonable grounds exist for the trial court's finding that Greenmoor established each of the six (6) essential prerequisites for issuance of a preliminary injunction under Pennsylvania law?

Burchick's brief, at 3.

■　¶ 6 At the outset, we note that Burchick's first issue is waived for failure to include the issue in its Pa.R.A.P.1925(b) statement. The failure of a party to include an issue in its Pa.R.A.P.1925(b) statement results in automatic wavier of the issue. *See In the Interest of K.C.*, 2006 PA Super 153, 18, 903 A.2d 12. Therefore, Burchick's first issue is waived, and we may not review it. *Id.*, 2006 PA Super 153, ¶ 18, 903 A.2d 12, 16–17. However, Burchick's second issue is present in its Pa.R.A.P.1925(b) statement, and, therefore, we will proceed to a review of the merits of the issue.

■　¶ 7 Burchick contends that Greenmoor failed to establish each of the six essential prerequisites for a preliminary injunction and, therefore, that the trial court abused its discretion in granting mandatory preliminary injunctive relief in favor of Greenmoor. We begin with the observation that the preliminary injunction in the present case is a *mandatory* preliminary injunction in that it commands positive acts on the part of Burchick to maintain the status quo between the parties

---

1. Phase II of the contract was near completion due to the work of Burchick's replacement subcontractor and, therefore, was not at issue during the preliminary injunction action.

2. Preliminarily, we note that we may exercise jurisdiction over this case pursuant to Pa. R.A.P. 311(a)(4), which provides that a direct appeal may be taken as of right by a party aggrieved by the entry of an order that grants an injunction.

*Mazzie v. Commonwealth*, 495 Pa. 128, 134, 432 A.2d 985, 988 (1981).

■ ¶ 8 We explained our unique standard of review for appeals from the grant of mandatory preliminary injunctions as follows:

> Generally, appellate inquiry is limited to a determination of whether an examination of the record reveals that "any apparently reasonable grounds" supports the trial court's disposition of a preliminary injunction request. [*Summit Towne Centre, Inc. v. Shoe Show of Rocky Mt., Inc.*, 573 Pa. 637, 646, 828 A.2d 995, 1001 (2003) ]. The standard of review differs, however, where, as here, the trial court has granted a mandatory preliminary injunction. *See id.*, note 7. Such a remedy is extraordinary and should be utilized only in the rarest of cases. *See id.*, note 13. Our Supreme Court has deviated from the general standard applicable to review of preliminary injunctions, *only* when reviewing the grant of a mandatory preliminary injunction. *See* [*Mazzie*, at 134, 432 A.2d at 988]. The *Mazzie* Court explained:
>
>> Generally, preliminary injunctions are preventive in nature and are designed to maintain the status quo until the rights of the parties are finally determined. There is, however, a distinction between mandatory injunctions, which command the performance of some positive act to preserve the status quo, and prohibitory injunctions, which enjoin the doing of an act that will change the status quo. This Court has engaged in greater scrutiny of mandatory injunctions and has often stated that they should be issued more sparingly than injunctions that are merely prohibitory. Thus, in reviewing the grant of a mandatory injunction, we have insisted that a clear

right to relief in the plaintiff be established. [ . . . ].

*Id.* (citations omitted and emphasis supplied.)

As the above elucidates, in reviewing the grant of a mandatory preliminary injunction we must examine the merits of the controversy and ensure that "a clear right to relief in the plaintiff [is] established." *See Id.*

*Kessler v. Broder*, 851 A.2d 944, 946–47 (Pa.Super.2004).

■ ¶ 9 A petitioner seeking a preliminary injunction must establish every one of the following prerequisites:

> First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth, and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Centre*, at 646–47, 828 A.2d at 1001. If a petitioner fails to estab-

lish any one of the aforementioned prerequisites, a reviewing court need not address the others. *Id.,* at 646, 828 A.2d at 1001.

■ ¶ 10 As stated above, a plaintiff seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by money damages. *Summit Towne Centre,* at 646, 828 A.2d at 1001. In order to meet this burden, a plaintiff must present "concrete evidence" demonstrating "actual proof of irreparable harm." *Kessler,* 851 A.2d at 951. The plaintiff's claimed "irreparable harm" cannot be based solely on speculation and hypothesis. *Id.,* 851 A.2d at 951. Moreover, for purposes of a preliminary injunction the claimed harm must be *irreversible* before it will be deemed irreparable. *See Sovereign Bank v. Harper,* 674 A.2d at 1085, 1093 (Pa.Super.1996).

¶ 11 Greenmoor, through its president, Fred Dellovade, claimed at trial that Burchick's action in terminating them from the asbestos removal would result in the failure of Greenmoor. *See* N.T., 9/1/2005, at 39. Mr. Dellovade explained that Burchick's termination of Greenmoor and the ensuing lawsuit precluded Greenmoor from obtaining proper bonding for future asbestos removal and abatement projects. Specifically, Mr. Dellovade testified that "until I settle this or this is determined whether we were terminated rightfully, [the bonding companies] won't touch [Greenmoor]. They are waiting for the outcome of [the preliminary injunction litigation]." *Id.,* at 39. As such, Greenmoor would not be able to procure future asbestos removal projects and the business would fail. *Id.,* at 39. Mr. Dellovade also testified that, as a result of the termination, Greenmoor was forced to lay off many of its employees. *Id.,* at 39.

¶ 12 Greenmoor also presented the testimony of its insurance agent, Gregory Sorokes, who corroborated Mr. Dellovade's testimony regarding Greenmoor's ability to procure bonding in the future. Mr. Sorokes testified that he attempted to procure bonding from five bonding companies for Greenmoor following its termination from its contract with Burchick, but the respective bonding companies would not bond Greenmoor because of the termination. *See* N.T., 9/1/2005, at 71. However, Mr. Sorokes testified that he would be able to procure future bonding for Greenmoor with certain bonding companies if the trial court issued the injunction and if Greenmoor completed the remaining work on the Burchick contract satisfactorily. *Id.,* at 71–72.

¶ 13 In contrast to the testimony of Mr. Dellovade and Mr. Sorokes, Burchick presented the expert testimony of Jay Edward Black. Mr. Black is a bond broker for Seubert and Associates, a large bond broker in the Pittsburgh area. Based on his review of Mr. Sorokes' solicitations to the bonding companies after Greenmoor's termination from the Burchick contract, Mr. Black testified that the solicitations were improper and, essentially, invited rejection from the Pittsburgh bonding companies because the solicitations focused solely on Greenmoor's termination from the Burchick project rather than other factors that play into a bonding company's decision to bond a contractor. N.T., 9/1/2005, at 150. Mr. Black testified that it was not necessary for a contractor to procure a bonding agent in a particular area and that there were several bonding companies nationwide that could bond an asbestos removal contractor. *Id.,* at 152. Likewise, Mr. Black testified that a termination of a contractor or subcontractor from a project would not preclude a contractor from obtaining bonding in the future. *Id.,* at 151.

¶ 14 It is correct, as Greenmoor asserts, that a preliminary injunction may be granted where the defendant's actions threaten monetary loss so great as to threaten the existence of the plaintiff's business. *See Three County Services, Inc. v. Philadelphia Inquirer,* 337 Pa.Super. 241, 486 A.2d 997, 1001 (1985). Nevertheless, viewing the "irreparable harm" prerequisite under our standard of review for mandatory preliminary injunctions, we cannot agree that Greenmoor established a "clear right to relief" in this case.

¶ 15 First, and most importantly, the loss of work for Greenmoor on Phases III–V constitutes a monetary loss that is compensable *via* an action at law for breach of contract and a subsequent money judgment. *See Three County Services,* 486 A.2d at 1001. It is true that the breadth of the Moorehead Federal Building project caused Greenmoor to forego other contracts for the five-year span of the Moorehead Federal Building project, but Greenmoor's decision not to bid other projects aggressively cannot constitute "concrete evidence" of irreversible harm to Greenmoor. We reach this conclusion because Greenmoor's decision not to bid on those projects had nothing to do with any wrongful conduct on Burchick's part, and, therefore, the loss of those possible projects cannot be attributable to Burchick's termination of Greenmoor from the Moorehead Federal Building project. Further, Greenmoor provided little demonstrable evidence to indicate whether Greenmoor would close its doors as a result of the lost business prospects. The sole testimony provided in this regard was from Mr. Dellovade, who offered nothing more than speculative conclusions regarding the economic future of Greenmoor. Likewise, the conflict in testimony between Greenmoor's witnesses and Mr. Black regarding the bonding issue indicates that the conclusions of Messers. Dellovade and Sorokes regarding the inability of Greenmoor to obtain bonding for future asbestos removal and abatement projects cannot be viewed as "concrete evidence" demonstrating an irreversible harm to Greenmoor *via* its inability to get bonding for future projects. *See Summit Towne Centre,* 646–47, 828 A.2d at 1001.

¶ 16 Therefore, the paucity of demonstrable evidence regarding Greenmoor's economic future and the conflict in the aforementioned testimony indicates that Greenmoor has failed to demonstrate satisfactorily that an irreparable and irreversible harm will result to its business as a result of Burchick's actions. *See Summit Towne Centre,* at 646–47, 828 A.2d at 1001. As such, Greenmoor cannot sustain its burden to prove a "clear right to relief" in this mandatory preliminary injunction action. *See Kessler,* 851 A.2d at 946–47. Consequently, we are bound to reverse the trial court's preliminary injunction. *Id.,* 851 A.2d at 946–47.[3]

¶ 17 Order reversed. Jurisdiction relinquished.

---

3. Inasmuch as we conclude that Greenmoor cannot meet the "irreparable harm" prerequisite, we need not consider the other prerequisite, sites. *See Summit Towne Centre,* at 646, 828 A.2d at 1001.