**Runkle v. Hahn.**

C.P. of Berks County, No. 10-24648.

*David Crossett,* for plaintiff.
*Brooke Boyer,* for defendant.

SPRECHER, *J.,* March 21, 2013—Defendant appeals the order dated January 3, 2013, which was in response to plaintiff's request for a preliminary injunction. This opinion is filed pursuant to Pa. R.A.P. 1925.

## FACTS

On April 4, 1985, plaintiff, William P. Runkle, and his former wife, Betsy Runkle, purchased real property in fee simple. The Runkles sold four parcels of the property

in 1987 and kept 41.18 acres that contained the marital residence and a pool (hereinafter, property).

On July 15, 2002, the Runkles agreed to lease a portion of property to sprint for a cell tower. The initial rent was $1,020.00 per month which was increased annually by three per cent. The lease was for five years and was automatically renewed for four additional terms of five years each unless Sprint or its successor provided the Runkles with notification of its intention not to renew. SBA Communications Corporation is the successor in interest to sprint.

The Runkles divorced in 2006. Following the divorce, plaintiff entered into a handwritten agreement (agreement) with defendants, Arthur G. Hahn and his wife, Lisa Hahn, to sell property to defendants and to reserve a life estate for himself. Defendants drafted the agreement, and all parties signed it. Agreement provides for defendants to purchase Betsy Runkle's share of property for $207,500.00; defendants paid this money directly to Betsy Runkle. In exchange for plaintiff's transferring all of his ownership interest in property to defendants, defendants gave plaintiff a life estate in property and the right to receive the cell tower rent (rent) for the remainder of plaintiff's life. Plaintiff had a duty to pay all property taxes, insurance, and utilities for property while he resided on it. If he ceased to reside on property, plaintiff had to pay just the property taxes. Agreement is dated May 3, 2006.

Plaintiff transferred his interest to property by deed dated June 30, 2006, paragraph 16 of another agreement

of sale dated June 30, 2006, states inter alia, that "William P. Runkle will reside in the premises for a duration of time and terms agreed upon by William P. Runkle and purchaser." Thus, it was clearly contemplated that plaintiff would reside on property pursuant to terms and conditions to which both parties agreed. Since June 2006, plaintiff has not received any rent because defendants required the cell tower company to issue the checks to them. Defendants used the funds to pay for the property taxes, insurance, and utilities that were plaintiff's obligation under agreement. Defendants also required plaintiff to pay $3,500.00 in cash and $500.00 in labor for one-half of the cost of replacing the pool liner on property. On May 2, 2011, plaintiff was removed from property and forced to reside in charitable housing for several months.

Plaintiff alleged in his complaint that while residing in property under the life estate, defendants interfered with his right to possess property, because they occupied the pool late at night and played a radio loudly. He also alleged that defendants discharged firearms on property. Plaintiff sought injunctive relief to have the rent returned to him and to be allowed to return to property.

This court scheduled the hearing on the preliminary injunction on December 18, 2012. Although defendants received notice of the hearing by court order, they did not appear. The hearing was therefore conducted in their absence. Plaintiff testified that he had owed his wife, Betsy Runkle, $207,500.00 under the post nuptial agreement. Before the life estate agreement, he had been living at a charity and had wanted to return to property, but he could

not afford to buy out his wife's interest. He therefore made a deal with defendants to live on property for the rest of his life and for defendants to pay Betsy Runkle the money owed under the post nuptial agreement in exchange for plaintiff's transfer of property to defendants. Plaintiff then returned to property. Defendants immediately took over the pool and began cashing the Rent checks. Plaintiff testified that due to defendants' testimony he was committed involuntarily on May 2, 2011, and removed from property. Plaintiff was not allowed by defendants to return to property following his release and remains barred from property.

While committed involuntarily, property was condemned as uninhabitable. The condemnation notice was dated May 3, 2011, and gave plaintiff ten days to give a proposed plan and sixty days to fix the problems. Plaintiff was not able to act, because he had been involuntarily committed from May 2, 2011, to May 14, 2011. He was not allowed back on property after defendants rehabilitated it. He was again forced to seek charitable housing.

Based on plaintiff's uncontroverted testimony, this court granted the preliminary injunction. Defendant's attorney immediately contacted plaintiff's attorney and an agreement was reached by the parties in which plaintiff agreed not to enforce the injunction until a rehearing. Defendants filed a motion for reconsideration. Defendants' attorney stated that he had been unavailable for the hearing on the preliminary injunction because he had been participating in a trial in federal court and had not known about the date of the hearing. Although no emergency

existed due to the agreement between counsel, defendant appeared before the emergency motions judge who stayed this court's order dated December 18, 2012.

## DEFENDANT'S CASE

This court then conducted a second evidentiary hearing on January 3, 2013, to allow defendants to present evidence in their case. Defendants called Burt Ganster, a constable who testified that he went to plaintiff's residence three times in 2011. He first served a notice to quit, then he served a notice that defendants would be coming to change the electrical set-up, and on the third visit, he was present with an electrician. Plaintiff had threatened to kill defendant at that time. Mr. Ganster found the house to be very cluttered and stinky with cat odors.

Duane Bialek, a self-employed electrician, testified that plaintiff threatened his men, so he went with them to plaintiff's residence. He said that the residence stank, needles were lying around, and cat feces were on the floor. Electrical junction boxes had stuff ripped out of them.

Around this same time, Anthony Garipoli, the Chief of Police of the police department serving the area where property is located, received a telephone call from the township manager who wanted him to check out property because a report had been received that property was unsuitable for habitation. He went with two service access management workers who wanted to assess plaintiff. He also found that property stank due to cat urine. There was trash lying around, cat feces on the floor, syringes on the counter, and dust.

Richard Gerhart, Jr., testified he is employed by Lower Alsace Township as a property maintenance inspector. He inspected property after receiving a complaint from the police department. He determined that property was not fit for habitation. Lower Alsace Township has a rental ordinance which states that in order for a home to be occupied by persons other than the owner, it needs a successful inspection to become a rental property. On February 7, 2012, apparently being told by defendants that property was a rental property, Lower Alsace Township issued a rental license for Property.

Defendant, Arthur E. Hahn, testified that in 2006 he had agreed to buy property from plaintiff because plaintiff had said that he had a cell tower and would be responsible for paying taxes and the homeowner's insurance. There was a second mortgage on property. Plaintiff was originally going to secure a loan to pay it; however, he had no collateral, so the loan would have cost nineteen per cent and would have required a $2,000.00 per year insurance policy to insure the loan due to plaintiff's age. Therefore, Mr. Hahn testified that he had drafted the agreement dated May 8, 2006, which gave him the rent to pay the taxes, homeowner's insurance, and the loan. Defendants contend that these obligations were greater than the monthly rent. Defendants, however, do not have any documentation from plaintiff authorizing the rent to go to them. Although defendants have received a total amount of approximately $105,500.00 in rent, defendants have only paid $3,858.96 per year on the $31,000.00 buyer assist loan and $9,435 in school and property taxes in 2012.

Mr. Hahn also testified that he had discovered damage to property when he had entered the residence with Mr. Gerhart after the police officer had been there. The last time that he had been inside the residence was approximately two years earlier when the residence had been satisfactory.

Mr. Hahn went to the magisterial district judge (MDJ) who granted him possession on May 25, 2011. Plaintiff did not appeal the order.

Mr. Hahn testified that he had spent $220,000.00 to rebuild the residence. Defendants now rent property to their daughter and son-in-law for $1,200.00 per month.

Although Lisa Hahn is a party to this action, she did not testify and was not present for either hearing.

## HOLDING

Based on the completed record, this court ordered that defendants may remain in possession of the real estate and continue to lease property and collect the rent. It further ordered that defendants are to pay plaintiff $1,500.00 per month, or in the alternative, defendants may agree to allow plaintiff to reoccupy property. If plaintiff returned to property, he had to maintain the real estate in good condition. Cell tower rent was to be paid to defendants except for the months of October 2012 through December 2012. Defendants filed a timely appeal.

## ISSUES

Defendants raise the following issues in their concise statement of errors complained of on appeal.

1. Did this court abuse its discretion in granting the preliminary injunction on January 3, 2013, when plaintiff failed to establish the elements necessary for the grant of a preliminary injunction?

2. Did this court abuse its discretion in granting a preliminary injunction on January 3, 2013, where there have been changes in the circumstances of the parties due to the destruction of the residence by plaintiff; the grant of possession of the property and residence to defendants by the 5/25/11 order of the MDJ; and the expenditure of a significant amount of money by defendants to rebuild the residence?

3. Did this court abuse its discretion in granting the preliminary injunction on January 3, 2013, requiring defendants either to pay the sum of $1,500.00 per month or return possession of the property to plaintiff because such injunction is a mandatory preliminary injunction and there has been no wrongful conduct on the part of defendants.

## DISCUSSION

This court shall address these issues collectively in setting forth its reasons for the aforesaid order. A person seeking a preliminary injunction must establish certain prerequisites: first, that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; second, that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested

parties in the proceedings; third, that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; fourth, that the activity the petitioner seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; fifth, that the injunction sought is reasonably suited to abate the offending activity; and sixth, that a preliminary injunction will not adversely affect the public interest. *Greenmoor, Inc. v. Burchick Construction Company*, 908 A.2d 310 (2006).

Plaintiff asked for a preliminary injunction to allow him to return to reside in property and to receive past and future rent. This court did not grant him this relief for several reasons. Clearly, the sixth prong of the test was met; a preliminary injunction would not adversely affect the public interest. The fifth prong was also met; plaintiff requested only what he was entitled to under the life estate: occupation of property and rent. The third prong was satisfied; the parties would properly have been restored to their status as it existed immediately prior to the alleged wrongful conduct of plaintiff's eviction from property.

This court further finds that plaintiff meets the fourth prong of showing that he is likely to prevail on the merits of his case. This court did not find defendants' evidence as credible as plaintiff's regarding the life estate. Plaintiff maintains that the May 3, 2006, agreement is the only agreement which he signed. Mr. Hahn contends that the parties executed a different agreement dated May 8, 2006. A third agreement of sale dated June 30, 2006, references

plaintiff's occupation of property according to another agreement between the parties, but does not specify any dated agreement. The two May agreements have the same signature page. Obviously, one of these agreements was not signed by all of the parties. Mr. Hahn acknowledged under cross examination that he had nothing from plaintiff authorizing him to collect rent, which was the major difference between the two May agreements. This court found that the same signature page from the May 3, 2006, agreement was attached to the May 8, 2006, agreement which Mr. Hahn drafted in an attempt to justify his retention of rent. The May 8, 2006, agreement offered by defendants substantially changed the conditions of the life estate by giving defendants' rent. This court believes that defendants wrote the later agreement and attached the signature page from the May 3, 2006, agreement to it; it is the very same page that plaintiff attached to his exhibit as the signature page. This court does not believe that plaintiff signed the May 8, 2006, agreement and further finds that plaintiff did not know about it. This court finds that the agreement that was executed by both parties was the agreement dated May 3, 2006.

Although defendants at the hearing defended their action based entirely on the May 8, 2006 agreement, they did not always do so. On cross examination of defendant, the testimony revealed that he never previously defended against plaintiff's complaint by arguing that the May 8, 2006 agreement even existed and that it said what defendant presented under oath. In fact, defendants actually answered plaintiff's complaint by referencing the agreement of June

30, 2006, only. Defendant made no mention of a May 8, 2006, agreement.

Mr. Hahn testified that he contacted the constable to help his electrician enter the residence and protect the employees. Very soon thereafter, the police, SAM, and the property maintenance officer were called to the scene, and plaintiff was removed and involuntarily committed. Plaintiff was not competent and needed to be hospitalized. Yet the very next day defendant filed a landlord/tenant action for possession against plaintiff. If plaintiff was not competent at the time of filing the landlord/tenant action, then defendants took advantage of plaintiff and any judgment for possession would be null and void.

Mr. Hahn testified in filing his court action before the MDJ, that it was his goal to attack the agreement as void. Regardless of which agreement defendant claims is binding on the parties, the fact is that a life estate was granted to plaintiff in exchange for great consideration (real estate and monthly cell tower rent) given to defendants. Yet defendants, instead of attacking the agreement as a life estate, alleged that the parties had a landlord and tenant relationship and filed a landlord/tenant complaint with the local MDJ.

According to Pa. R.C.P.M.D.J. No. 530, defendant in his landlord/tenant complaint had to state under oath 1) that he is a landlord, 2) that property is leased or rented, 3) the term for which property is leased or rented, and 4) that said term is "fully ended." Defendant presented no testimony that he was able to truthfully allege a lease,

a lease term, a monthly rent, or that he was a landlord. (*Black's Law Dictionary* (8th Edition) defines landlord as "One who leases real property to another"). Defendant also could not truthfully swear that 5) there was any written or oral month to month lease and that it had ended. Somehow he was able to successfully "evict" plaintiff through the MDJ proceedings.

Unquestionably, plaintiff had a life estate in property. *Black's Law Dictionary* (8th Edition) defines estate as "The amount, degree, nature, and quality of a person's interest in land or other property; especially, a real estate interest that may become possessory, the ownership being measured in terms of duration." A life estate is further defined as "An estate held only for the duration of a specified person's life, usually the possessor's." A life estate may be created or reserved without use of any particular phrases or words of art. *Cheroka v. Tobolski,* 151 Pa. Super. 238, 30 A.2d 152 (1943).

This court finds that in the case sub judice, the intent of the parties was to create a life estate and that a life estate was created and held by plaintiff. Therefore, the relationship between the parties was never tenant and landlord; it was that of possessor and remaindermen. Defendants had no legal right to evict plaintiff. Until his death owned that residence, only. The designation "not fit for habitation" may be declared by the township plaintiff for a leased property in a landlord/tenant relationship, only. Defendants had no authority to obtain a license to rent property. Plaintiff is still alive and his possessory interest in property remains.

Neither did defendants have any right to enter his home or to change the electrical circuits; their right of possession has not yet come to fruition.

## CELL TOWER RENT

Assuming arguendo, that defendants believed that they were entitled to rent because they had assumed the payments for the outstanding lien of $31,000, they exceeded their entitlement to rent. Defendants have received approximately $105,000.00 in rent. If they would have paid taxes for seven years and paid off the entire $31,000 loan, they would have paid expenses of $97,045.00; however, they did not pay off the loan. Instead, they paid approximately $27,013.00. Thus, money should have been paid to plaintiff, and it was not. Furthermore, there is no evidence that plaintiff had any responsibility to pay pool expenses. The pool is not excluded from his life estate; if he did not want to fix it because he did not use it, he had no responsibility to do so. Plaintiff's possessory interest continues in property because he is still alive and his entitlement to rent continues. Defendants reserved a right only to enter property. There is nothing in any agreement that permits them to use any facilities or structures, including the swimming pool, that are located on property. Therefore, this court found that plaintiff will probably prevail on the merits of his case.

## CONCLUSION

The reasons that this court did not grant the preliminary injunction as requested were due to prongs one and two. If plaintiff had filed for a preliminary injunction immediately

upon his removal from property, this court would have been constrained to grant the preliminary injunction; however, over one year has passed since plaintiff's unlawful eviction. There are also tenants, defendants' relatives, who are now living on property who would have been impacted by the grant of a preliminary injunction. For these reasons, this court did not grant the requested preliminary injunction; instead, it attempted to do what was equitable under the circumstances until a trial could be held.

According to plaintiff's forma pauperis affidavit, plaintiff receives $788.00 per month in Social Security benefits and $70.00 per month in food stamps. He is approximately seventy-eight years old. This court ordered defendants to pay plaintiff $1500.00 per month because plaintiff is dispossessed solely due to defendants' actions and needs a place to live which is hard to find with his limited funds. If he wins, he will be entitled to all of the rent minus any expenses owed pursuant to the life estate. The expenses that he will owe are considerably less than those owed while he was in possession. By awarding $1,500.00 per month, this court was certain that this is the minimum amount to which plaintiff is entitled.

In accordance with the foregoing opinion, this court submits that its order should be sustained and the appeal denied.