# Coffee Services International Co. v. SXB Acquisitions, LLC

98

C.P. of Philadelphia County, July Term, 2013 No. 01926

*Maurice R. Mitts*, for plaintiff.

*Garth Hoyt* and *Benjamin R. Picker*, for defendants Spencer Corliss, Alfred W. D'Iorio, Nick Bayer, MVP Capital Partners and SXB Acquisitions, LLC.

*Justin J. Williams, Joanna J. Cline* and *Maria Feeley*, for defendant Dillanos Coffee Roasters, Inc.

GLAZER, *J.*, August 1, 2013—The petition for a special and preliminary injunction of plaintiff, Coffee Services International Company ("CSI,") requires this court to determine whether defendant SXB Acquisition, Inc. ("SXB,") shall be compelled to reinstate a contract which SXB entered into with CSI, but which it subsequently terminated. For the reasons below, the court finds that SXB shall not be compelled to reinstate the contract and continue to do business with CSI.

## BACKGROUND

SXB is the franchisor of a chain of coffee shops. CSI is a supplier of roasted coffee. On 13 March 2012, SXB and CSI entered into a "Roasting Agreement" whereby CSI agreed to serve as exclusive supplier of all coffee products to all of the franchisees of SXB.[1] However, by letter dated 5 July 2012, SXB notified CSI that it was terminating

---

1. Private Label Manufacturing and Primary Franchise Supply Agreement (the "Roasting Agreement,") Exhibit 2 to the complaint of plaintiff, Article III, §3.1.

the Roasting Agreement. The termination letter stated as follows:

> This letter shall serve as a written notice to CSI that [SXB] is terminating the [Roasting] Agreement.... [SXB] bases its termination of the [Roasting] Agreement on two grounds.

> First, [SXB] terminates the Agreement because of CSI's numerous, unresolved defaults of the [Roasting] Agreement....CSI's failures to comply with the [Roasting] Agreement are material breaches of the agreement, and they remain unresolved more than thirty (30) days after written notice.

> Second, [SXB] terminates the [Roasting] Agreement because of the insolvency of CSI's sole owner. On June 12, 2013, the Honorable Magdeline D. Coleman ruled in Re Joseph Grass, Bankruptcy No. 12-11063-MDC, in the U.S. Bankruptcy Court in the Eastern District of Pennsylvania, that the debtor's estate is administratively insolvent because of evidence of an ongoing negative cash flow and an inability to satisfy current expenses....[2]

On 12 June 2013, CSI filed a complaint against SXB. The complaint asserts the claims of injunctive relief, breach-of-contract, fraud-in-the-inducement and civil conspiracy. On 16 July 2013, CSI filed the instant petition for a special and preliminary injunction. According to CSI's petition, SXB "engaged ... in a course of systematic conduct

---

2. Notice of Termination, attached as Exhibit A to the answer in opposition of SXB to the petition of a special and preliminary injunction of CSI.

designed to terminate the [Roasting Agreement thus] ... freeing SXB to enter into [a separate agreement] whereby [defendant Dillanos Coffee Roasters, Inc.] would provide substantially similar coffee products to SXB's franchisees that would otherwise be supplied by [CSI] under the Roasting Agreement."[3] Furthermore, CSI asserts in its petition that "[a]pproximately 100% of CSI's business ... comes from SXB and its franchisees"; therefore, CSI "will be forced to close its doors permanently, resulting in the loss of 13 jobs," unless SXB is enjoined from terminating its contract with CSI.[4] CSI concludes that it will suffer immediate and irreparable harm if the petition for special and preliminary injunction is not granted. In short, CSI asks this court to enter a mandatory injunction compelling SXB to maintain its business relations with CSI, and "to continue to require its franchisees to purchase all coffee products from CSI pursuant to the Roasting Agreement."[5]

## DISCUSSION

In Pennsylvania,

[a]n injunction can be either preventative or mandatory....While the purpose of all injunctions is to preserve the *status quo*, prohibitory injunctions do this by forbidding an act or acts while mandatory injunctions command the performance of some specific act that will maintain the relationship between the parties. Thus, preventative injunctions maintain the present status of the parties to the litigation by barring any action

---

3. SXB's petition for a special and preliminary injunction, ¶1.
4. Affidavit of Joseph Grasso, Jr., CEO of CSI, ¶67; SXB's petition for a special and preliminary injunction ¶¶4-5.
5. Proposed order attached to CSI's petition for a special and preliminary injunction, ¶3b.

until the litigants' rights are adjudicated on the merits. Mandatory injunctions require the performance of a positive action to preserve the *status quo*, are subject to greater scrutiny, and must be issued more cautiously than preventative injunctions.[6]

In Pennsylvania, a petitioner seeking mandatory injunctive relief must establish all of the following prerequisites:

First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages.

Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings.

Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct.

Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits.

Fifth, the party must show that the injunction it seeks is

6. *Shepherd v. Pittsburgh Glass Works, LLC*, 2011 Pa. Super 156; 25 A.3d 1233, 1241 (Pa. Super. 2011).

reasonably suited to abate the offending activity.

Sixth, and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Greenmoor, Inc. v. Burchick Construction Company, Inc.*, 2006 Pa. Super. 252; 908 A.2d 310, 313 (Pa. Super. 2006).

In *Greenmoor*, Burchick, a general contractor, entered into five agreements with subcontractor Greenmoor. Under the terms of the five subcontracts, Greenmoor agreed to remove asbestos from a large building through five separate stages of operations. Shortly after commencement of the second stage, Burchick terminated the contract and Greenmoor filed suit against Burchick. Greenmoor sought *inter alia* preliminary injunctive relief to compel Burchick to reinstate the remaining subcontracts.[7] A hearing was held on the matter, and Greenmoor offered testimony that its termination by Burchick "would result in the failure of Greenmoor."[8] After the hearing, the trial court granted Greenmoor's request for injunctive relief and ordered Burchick to reinstate the remaining subcontracts.[9] Burchick appealed. On appeal, the Pennsylvania Superior Court faced the following issue:

Whether the trial court erred as a matter of law and abused its discretion where no reasonable grounds exist for the trial court's finding that Greenmoor established each of the six (6) essential prerequisites for issuance

---

7. *Greenmoor, Inc. v. Burchick Construction Company, Inc.*, 2006 Pa. Super. 252; 908 A.2d 310, 311-312 (Pa. Super. 2006).
8. *Id.* at 314.
9. *Id.* at 312.

of a preliminary injunction under Pennsylvania law.[10]

Reversing, the Pennsylvania Superior Court explained that although "a preliminary injunction may be granted where the defendant's action threaten monetary loss so great a to threaten the existence of plaintiffs business," the loss by Greenmoor of the remaining subcontracts constituted "a monetary loss ... compensable via an action at law for breach of contract and a subsequent money judgment."[11] Thus, according to the Superior Court, Greenmoor had failed to show "that an irreparable and irreversible harm [would] result to [the business of Greenmoor] as a result of Burchick's actions.[12]" Consequently, the Superior Court held that "Greenmoor [could] not sustain its burden to prove a 'clear right to relief in its mandatory preliminary injunction action."[13]

Similarly to plaintiff in *Greenmoor*, CSI asserts in its petition that it will be forced to close its doors permanently, and thirteen of its employees may lose their jobs, if SXB is not compelled to reinstate the Roasting Agreement and require its franchisees to purchase all coffee products from CSI. Although this dire prediction could materialize, CSI has not shown that it will suffer irreparable harm which cannot be adequately compensated by money damages. SXB may not be compelled to continue to do business with CSI, and the petition for a special and preliminary injunction is denied.

## ORDER

---

10. *Id.* at 312.
11. *Id.* at 315.
12. *Id.*
13. *Id.*

And now, this 1st day of August, 2013, upon consideration of the petition for a special and preliminary injunction of plaintiff, Coffee Services International Company, the responses in opposition of defendants Dillanos Coffee Roasters, Inc. and SXB Acquisition, LLC *et al.*, and the respective memoranda of law, it is ordered that the petition is denied.