J-A06034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HOWARD HANNA D/B/A HOWARD HANNA REAL ESTATE SERVICES | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : : | |
| v. | : : : | |
| | : | No. 967 WDA 2021 |
| MICHAEL HORNUNG, AN INDIVIDUAL; JENNIFER CROUSE, AN INDIVIDUAL; LEAH GEORGE, AN INDIVIDUAL; COMPASS, INC. F/K/A URBAN COMPASS, INC., A DELAWARE CORPORATION AND COMPASS PENNSYLVANIA, LLC, A DELAWARE LIMITED LIABILITY COMPANY | : : : : : : : : : : | |

Appeal from the Order Entered August 6, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 21-001894

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

DISSENTING STATEMENT BY COLINS, J.:        **FILED: JUNE 23, 2022**

Based upon the nature of the non-compete clauses at issue here, I agree

with the learned Majority's conclusion that this case falls within the capable-

of-repetition mootness exception.  ***But see infra***.  However, I disagree with

the Majority's determination that the trial court abused its discretion in finding

that Howard Hanna ("Hanna") failed to establish that (1) a preliminary

injunction was necessary to prevent immediate and irreparable harm from the

---

[*] Retired Senior Judge assigned to the Superior Court.

alleged breach by Appellees Jennifer Crouse and Leah George of their non-compete clauses that could not be adequately compensated by money damages and (2) greater injury would have occurred from denying the preliminary injunction than from granting it. Therefore, I respectfully dissent.

I begin my discussion with the well-established precept that this Court "exercises a highly deferential [abuse of discretion] standard of review with respect to the grant or denial of a preliminary injunction." **Pittsburgh Logistics Sys., Inc. v. Beemac Trucking, LLC**, 249 A.3d 918, 923 (Pa. 2021); **see also Weeks v. Department of Human Services**, 222 A.3d 722, 727 (Pa. 2019).

> [O]n an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were **any apparently reasonable grounds** for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].

**Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.**, 828 A.2d 995, 1000 (Pa. 2003) (citation omitted; emphasis added).

The trial court in this matter quite clearly set forth "apparently reasonable grounds," supported by the preliminary injunction record, to bolster the court's determination that Hanna failed to meet its burden of proving the first two preliminary injunction requirements. **Summit Towne Centre**, 828 A.2d at 1000 (citation omitted). Moreover, contrary to the

Majority, I do not believe that the trial court palpably erred when applying the relevant legal standards.

The trial court first found that Hanna failed to demonstrate that a preliminary injunction was necessary to prevent immediate and irreparable harm that could not be adequately compensated by money damages. **See Pittsburgh Logistics**, 249 A.3d at 934 n.7. Hanna attempted to show at the preliminary injunction hearing that it was harmed when, in the period covered by the non-compete agreements, Crouse and George listed multiple properties within a five-mile radius of their prior Hanna offices and that these listings damaged Hanna's existing client relationships as well as its goodwill in the Pittsburgh area.

However, as the trial court recognized, the only harm that Hanna had proved it suffered at the injunction hearing was lost commissions on identified home sales, which "could of course be calculated, and [Hanna] could therefore be adequately compensated in monetary damages." Trial Court Opinion ("TCO"), 10/25/21, at 4 (unnumbered). The evidence Hanna submitted at the hearing was confined to commissions on specific properties that Appellees listed within the five-mile exclusion area during the relevant non-compete terms. N.T., 6/3/21, at 57-72; N.T., 6/7/21, at 23-26, 39-49; Hearing Exhibits 3, 5-6, 8, 12-14. Thus, Hanna's claimed damages related only to a limited number of properties and are readily amenable to calculation based upon Hanna's commission schedules agreed to between Hanna and Appellees. **See** Amended Complaint, 3/23/21, Exhibit B ¶4, Exhibit C ¶4; **see also**

*Summit*, 828 A.2d at 1002-03 (irreparable harm is not shown where records are kept that allow for quantification of business loss); *Greenmoor, Inc. v. Burchick Construction Co., Inc.*, 908 A.2d 310, 315 (Pa. Super. 2006) (monetary loss that is compensable via a breach of contract action and subsequent money judgment does not constitute irreparable harm).

Furthermore, the trial court appropriately concluded on the record before it that Hanna's claimed harm of a loss of clients was belied by the fact that Hanna "repeatedly acknowledged that the clients and client loyalty . . . belonged to [Appellees] as self-employed independent contractors," not to Hanna.[1] TCO at 4. The evidence at the hearing showed that Hanna not only acknowledged, but actually promoted to prospective hires, that clients and client loyalty belong to the agent rather than Hanna. N.T., 6/17/21, at 118-21; Hearing Exhibits G-I (recruiting material stating that "[m]aintaining your clients" is a benefit of becoming a Hanna agent and that Hanna agents are permitted "[m]ore time focusing on their clients and growing their business").

---

[1] Hanna challenges this finding on appeal, arguing that the Sales Associate Agreements and Pennsylvania law both provide that listings are the property of real estate broker rather than agents. *See* 63 P.S. §§ 455.606, 455.606a(b)(1); Amended Complaint, 3/23/21, Exhibit B ¶8, Exhibit C ¶8. Crucially, however, the question is not the ownership of the property listings—there is no allegation that Appellees violated state law by transferring listings without the clients' consent—but instead whether a departing Hanna agent can continue their relationship with their clients at a new brokerage. In any event, the sole question before this Court is whether there were any "apparently reasonable grounds" for the trial court's finding that client loyalty belonged to Hanna's agents. *Summit Towne Centre*, 828 A.2d at 1000 (citation omitted). Here, the record supported the trial court's finding as to client loyalty.

- 4 -

As the trial court explained in its ruling, Hanna did not present any evidence that it had a pre-existing relationship with Appellees' clients whose sales allegedly violated the restrictive covenants. TCO at 4. Moreover, Hanna's claims that Appellees' actions harmed its overall goodwill and reputation in the Pittsburgh market were based upon vague, speculative testimony and were properly rejected by the trial court. **See Summit**, 828 A.2d at 1001-02; **Greenmoor**, 908 A.2d at 315 (preliminary injunction must be based upon "concrete evidence" of irreparable harm to movant).

The Majority concludes that Hanna should not be penalized based upon the fact that it only showed "limited damages" but instead that irreparable harm existed as a result of "the threat of the unbridled continuation of the violation and resultant incalculable damage to [Hanna's] business." Majority Opinion at 10-11 (quoting **John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.**, 369 A.2d 1164, 1167 (Pa. 1977)). However, what the Majority overlooks is that Hanna was not only required to **allege** ongoing, incalculable harm from the violation of the non-compete agreements, but it was also required to **prove** that such harm would occur. **See West Penn Specialty MSO, Inc. v. Nolan**, 737 A.2d 295, 299 (Pa. Super. 1999) ("[G]rounds for an injunction are established 'where the plaintiff's proof of injury, although small in monetary terms, foreshadows the disruption of established business relations which would result in incalculable damage should the competition continue in violation of the [restrictive] covenant.'") (citation omitted). The trial court reasonably concluded that Hanna did not make such a showing. As

- 5 -

the trial court explained, not only are the claimed damages easily calculable from a discrete number of listings or sales within the designated five-mile area over a finite period of six or eight months, but the record also supported the conclusion that Appellees' actions would not lead to an ongoing interference with Hanna's customer base as Hanna's policy was that client loyalty belonged to the agents, not Hanna. **Cf. Rollins Protective Services Co. v. Shaffer**, 557 A.2d 413, 414-15 (Pa. Super. 1989) (to show irreparable harm in order to obtain a preliminary injunction to enforce a non-compete clause, the movant must show unwarranted interference with customer relationships, use of confidential information, or the like).

The trial court's well-reasoned finding that Hanna did not demonstrate irreparable harm is alone sufficient grounds for this Court to affirm the denial of the preliminary injunction. **See Pittsburgh Logistics**, 249 A.3d at 934 (appellate court shall affirm denial of preliminary injunction when it finds that trial court properly determined that any one of the six elements of standard was not met). Nevertheless, I would also hold that the trial court correctly ruled that Hanna did not prove the second element of the preliminary injunction standard, that greater injury would result from refusing to grant the injunction than from granting it. **Pittsburgh Logistics**, 249 A.3d at 934 n.7.

The Majority determined that the trial court improperly balanced the large economic disparity between Hanna, a "well-established" real estate brokerage, against Appellees' interest in earning a living in their chosen trade

and, in fact, the non-compete clauses only minimally affected Appellees from pursuing their vocation. Majority Opinion at 12-14 (quoting TCO at 5); *see also AmQuip Crane Rental, LLC v. Crane & Rig Services, LLC*, 199 A.3d 904, 918 (Pa. Super. 2018) (noting that courts must avoid comparing the financial positions of a large employer to an individual employee who violates a non-compete clause as doing so would always weigh in favor of the employee whose livelihood would be affected by the enforcement of the restrictive covenant).

However, I read the trial court's ruling differently. The trial court focused on the fact that the only proven harm to Hanna from the denial of the injunction would be lost commissions on specific sales during the non-compete clause terms and it would not suffer incalculable harm on future sales in light of the fact that client loyalty belonged to Appellees. TCO at 4-5. As the trial court noted, Hanna would still be able to recover the lost commissions as damages if it ultimately prevailed in this litigation. *Id.* at 5. On the other hand, the trial court found, based upon ample testimony from the preliminary injunction hearing, that a much more pervasive harm would befall Appellees if they were prohibited from working as agents in the geographic area in which they focused their careers. *Id.* at 5; *see also* N.T., 6/3/21, at 93-96; N.T., 6/17/21, at 20-21. The trial court's balancing of harm thus was not based simply upon a comparison of the parties' relative financial positions but instead was grounded on the fact that, under the unique facts of this case, Hanna simply had not proven any harm aside from compensable monetary damages.

I additionally note one other point of disagreement with the Majority. The trial court here only ruled on the first two of the six elements of the preliminary injunction standard. After finding that the trial court abused its discretion as to the first two elements, the Majority would remand to allow the trial court to address the remaining four prerequisites for a preliminary injunction. Majority Opinion at 14.

While I agree with the Majority that we are permitted to address the issues raised by Hanna in the current appeal via the capable-of-repetition exception to the mootness doctrine, I do not believe that it would be a prudent use of judicial resources to stretch this exception farther to permit an additional round of litigation on a preliminary injunction to enforce the non-compete clauses that have long since lapsed. Therefore, even assuming I were to agree with the Majority's analysis of the issues before us in this appeal, I would remand to the trial court solely for further litigation regarding the merits of the non-compete clauses.