Laura A. AMBROGI, Co–Administrator of the Estate of Tara DeSimone, Appellee

v.

Robert M. REBER, Rosemary Reber, Reber Real Estate, Inc. and Reber Property Management, Appellants.

Laura A. Ambrogi, Co-administrator of the Estate of Tara DeSimone, Appellee

v.

Robert M. Reber, Rosemary Reber, Reber Real Estate, Inc. and Reber Property Management, Appellants.

Superior Court of Pennsylvania.

Argued April 10, 2007.
Filed Sept. 7, 2007.

Charles K. Graber, King of Prussia, for appellants.

Carmen P. Belefonte, for appellee.

BEFORE: HUDOCK, LALLY–GREEN and COLVILLE,* JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is a consolidated interlocutory appeal as of right, pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(4), from the grant of a preliminary injunction entered to prevent dissipation of assets. We affirm.

¶ 2 In December of 2003, Tara DeSimone, Joseph DeSimone and Frank Cifelli resided in an apartment located at 338 Beverly Boulevard, Upper Darby, Delaware County, Pennsylvania. The property was owned by Robert and Rosemary Reber, either individually or through Reber Real Estate, Inc., and/or Reber Property Management. A fire occurred at 338 Beverly Boulevard on December 8, 2003. Twenty-three-year-old Tara DeSimone and her four-year-old son, Joseph, perished in the fire. Frank Cifelli suffered serious injuries. Three law suits were commenced by writ of summons on behalf of the victims of the fire (hereafter collectively Appellees) naming as defendants Robert M. Reber, Rosemary Reber, Reber Real Estate, Inc. and Reber Property Management (hereafter collectively Appellants). These suits were consolidated by trial court order at Delaware County No. 05–2118.

* Retired Senior Judge assigned to the Superior Court.

¶ 3 The complaint filed in the consolidated action asserts that Appellants engaged in both intentional and negligent conduct in violation of provisions of both the BOCA Code[1] and the local safety codes established by Upper Darby Township, and that these violations allegedly caused the fire that killed Ms. DeSimone and her son and injured Mr. Cifelli. Among other things, Appellees' complaint alleges that, at the Beverly Boulevard property, Appellants violated the applicable safety codes by failing to provide required smoke detectors, permitting a dangerously non-compliant electrical wiring system to remain in place, failing to warn Appellees that the electrical system was unsafe and failing to take any steps to remedy the code violations that caused both the fire and Appellees' inability to escape uninjured from the conflagration. *See* Complaint, 6/10/05, at 4–22. Appellees' complaint seeks both compensatory and punitive damages.

¶ 4 It is undisputed that Appellants possess only $1,000,000.00 in liability insurance, but that they own a substantial amount of real property situated in the Commonwealth of Pennsylvania. Trial Court Opinion, 11/9/06, at 2. After the commencement of the consolidated action, Appellees were provided with notice that Appellants intended to sell the property at which the fire occurred. Appellees investigated matters further and learned that Appellants were in the process of liquidating their assets and, as of May of 2006, already had sold fifteen properties. *Id.* Appellees feared that Appellants were engaging in a course of conduct designed to render themselves "execution proof" from any judgments that might result from the consolidated suit. Therefore, Appellees filed a joint emergency motion seeking both a preliminary and a permanent injunction to preclude Appellants from dissipating their assets.

¶ 5 After conducting a hearing in the matter, the trial court entered an order granting Appellees' request for a preliminary injunction. Under the terms of the trial court's order, Appellants were precluded from "engaging in the partial or wholesale dissolution of their assets" in anticipation of the pending litigation. Appellants were not precluded from selling properties, buying new properties or from managing their existing assets. However, the trial court determined that it was necessary for it to exercise supervision over the disposition of any assets realized upon the sale of a property.

AND NOW, this 9th day of May, 2006, after a hearing and following thorough and careful consideration of the [Appellees'] Joint Emergency Motion for the Entry of a Preliminary/Permanent Injunction pertaining to the sale and/or transfer of real property within the actual or equitable ownership of [Appellants], and [Appellants'] Response thereto, as well as the Memoranda of Law submitted in support thereof, it is hereby ORDERED and DECREED that [Appellees'] Motion for a Preliminary Injunction will be, and hereby is, GRANTED in order to prevent [Appellants] from engaging in the partial or wholesale dissolution of their assets in anticipation of, and for the purpose of, avoiding their responsibilities to dis-

---

1. The BOCA Code is a model safety code promulgated by the Building Officials and Code Administrators International, Inc. (BOCA) establishing standards for the construction of new buildings, as well as for the safe maintenance of existing structures. 35 P.S. § 7210.102(a)(4). The BOCA Code has been widely adopted in Pennsylvania and throughout the United States. *Id.* BOCA is now known as the International Code Council (ICC). *See International Code Council Online* at http://www.iccsafe.org/news/about (last viewed June 21, 2007).

charge any civil liability that may be determined against them in the above-captioned cause of action. In keeping with this ORDER, it is further DECREED that:

1. Within ten (10) days of the date hereof, [Appellants] shall submit to the Court a complete list of all real property holdings in which they possess, in whole or in part, an actual or equitable ownership interest.

2. [Appellants] shall, within five (5) business days from the receipt of the gross proceeds derived from any and all sales, transfers, and/or assignments of any and all real property holdings in which they possess, in whole or in part, an actual or equitable ownership interest, deposit the receipts in their entirety in an interest bearing Court supervised escrow account, or face sanctions upon [Appellees'] further petition to the Court.

3. At all times thereafter, pending the conclusion of trial and entry of judgment and/or other final disposition of this litigation that may be determined by express agreement of the parties, [Appellants] hereby, and thereby are, required to, and shall, petition this Court for permission to make any withdrawals therefrom.

4. [Appellees] shall, within ten (10) days of the date of this Order, post bond in the amount of $500,000.00 (Five Hundred Thousand Dollars) with the Court of Common Pleas of Delaware County, Pennsylvania pursuant to Pennsylvania Rule of Civil Procedure 1531(b).

Preliminary Injunction, 5/9/06 (docketed 5/10/06). Appellees filed a petition to modify the preliminary injunction to obtain an extension of the deadline for posting the necessary bond to accommodate the un-derwriting requirements of the bonding company, which the trial court granted.

¶ 6 Appellants filed both a timely notice of appeal from the order entered on May 10th, and a timely motion for reconsideration seeking to vacate the preliminary injunction. On June 7, 2006, the trial court granted reconsideration and, on June 13, 2006, the trial court conducted a second hearing. Subsequently, the trial court entered the following order:

AND NOW, this 19th day of June, 2006, after a hearing and following thorough and careful consideration of [Appellants'] Motion for Reconsideration of the Court's Order of May 9, 2006, and [Appellees'] Petition to Modify Bond Amount as set forth in the said Order, and the Responses thereto, as well as the Memoranda of Law submitted in support thereof, it is hereby ORDERED AND DECREED that paragraphs 2 and 4 of the said Order will be, and hereby are, **REVISED** and **MODIFIED IN THE FOLLOWING PARTICULARS:**

"(2) [Appellants] shall, within five (5) business days from the receipt of the net proceeds (*i.e.* gross proceeds of any sales less all reasonable, necessary and customary costs associated therewith, and payment of any encumbrances related to the property) derived from any and all sales, transfers, and/or assignments of any and all real property holdings in which they possess, in whole or in part, an actual or equitable ownership interest, deposit the receipts in their entirety in an interest bearing Court supervised escrow account, or face sanctions upon [Appellees'] further petition to the Court."

\* \* \* \*

"(4) [Appellees] shall, within ten (10) days of the date of this Order, post

bond in the amount of $100,000.00 (One Hundred Thousand Dollars) with the Court of Common Pleas of Delaware County, Pennsylvania pursuant to Pennsylvania Rule of Civil Procedure 1531(b)."

IT IS FURTHER ORDERED and DECREED THAT IN ALL OTHER RESPECTS THE Court's Order dated May 9, 2006, shall remain in full force and effect.

Order, 6/19/06 (docketed 6/20/06).

¶ 7 The required bond was posted on June 21, 2006. On June 26, 2006, Appellants filed a timely notice of appeal from the order of June 19th. The trial court ordered Appellants to file a Rule 1925(b) statement within fourteen days. Appellants timely complied. This appeal presents one issue:

1. Did the lower court err in granting a mandatory injunction, requiring [Appellants] to deposit into a court-supervised escrow account any net proceeds received from the sale of real estate they own, where [Appellees] failed to prove their entitlement to the extraordinary remedy of injunctive relief and the injunction issued is not reasonably suited to address the result about which the lower court expressed concern: *to wit*, inadequate assets with which to satisfy any future, excess judgment entered against [Appellants]?

Appellants' Brief at 6.[2]

¶ 8 Appellate courts review the grant of a preliminary injunction for an abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995, 1000 (2003). An abuse of discretion is not merely an error of judgment. *Paden v.*

*Baker Concrete Construction, Inc.*, 540 Pa. 409, 658 A.2d 341, 343 (1995). Rather, an abuse of discretion exists if the trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, or if it fails to apply the law or was motivated by partiality, prejudice, bias, or ill will. *Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1123 (2000). If the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion. *Id.*

¶ 9 The purpose of a preliminary injunction is to prevent irreparable injury or gross injustice by preserving the *status quo* as it exists or as it previously existed before the acts complained of in the complaint. *Anchel v. Shea*, 762 A.2d 346, 351 (Pa.Super.2000). *See The York Group, Inc. v. Yorktowne Caskets, Inc.*, 2007 PA Super 114, ¶ 26, 924 A.2d 1234 (stating that the status quo to be maintained by a preliminary injunction is the legal status that preceded the pending controversy). Any preliminary injunction is an extraordinary, interim remedy that should not be issued unless the moving party's right to relief is clear and the wrong to be remedied is manifest. *Anchel*, 762 A.2d at 351. Otherwise, the preliminary injunction will be dissolved. *Id.*

¶ 10 A distinction must be made between prohibitory and mandatory injunctions. *Mazzie v. Commonwealth*, 495 Pa. 128, 432 A.2d 985, 988 (1981). While the purpose of all injunctions is to preserve the *status quo*, prohibitory injunctions do this by forbidding an act or acts while mandatory injunctions command the performance of some specific act that will maintain the relationship between the parties. *Id.* As a general matter, appellate

---

**2.** As the trial court noted, Appellants' concise statement does not identify any challenge to the amount of the bond, which was tied to Appellants' potential interest loss on any funds that might be escrowed. *See* Trial Court Opinion, 11/9/06, at 8 n. 2.

inquiry is limited to a determination of whether an examination of the record reveals that "any apparently reasonable grounds" support the trial court's disposition of a request for a preliminary injunction. *Summit Towne Centre*, 828 A.2d at 1000. However, greater appellate scrutiny is required when a court issues a mandatory injunction. *Mazzie*, 432 A.2d at 988.

¶ 11 Appellants claim that the trial court applied incorrect legal standards in granting preliminary injunctive relief in this case. However, we cannot agree. The entry of a preliminary injunction for the purpose of enjoining the dissipation of assets in anticipation of a lawsuit is not a novel event. *See Citizens Bank of Pennsylvania v. Myers*, 872 A.2d 827, 836 (Pa.Super.2005). This Court has affirmed grants of preliminary injunctions to prevent the dissipation of assets when the circumstances warranted the trial court's action. *See id.* (citing cases).

¶ 12 There is nothing unique about the requirement imposed by the trial court in this case that precludes Appellants from selling their real property without placing the net proceeds into a court supervised escrow account. For example, in *Walter v. Stacy*, 837 A.2d 1205 (Pa.Super.2003), we held that it was proper for the trial court to prohibit the sale of certain real property unless the defendants placed the resulting funds into escrow. We also found that it was appropriate for the trial court to require its approval as a condition of the defendants being permitted to use any of the funds realized from the property sale in order to prevent the "unfair, wholesale dissolution of [the defendants'] assets in anticipation of civil liability." *Walter*, 837 A.2d at 1207. Furthermore, we have affirmed the validity of this type of reasoning by the trial court in other cases. *See, e.g., Citizens Bank, supra.* We conclude that Pennsylvania law does not preclude a trial court from granting a preliminary injunction to prevent dissipation of assets.

¶ 13 Appellants have attempted to distinguish *Walter* on the grounds that liability in that case stemmed partially from criminal acts committed by one of the defendants. We understand that, as of the date on which the instant appeal was filed, no criminal charges had been brought against Appellants. However, the trial court in *Walter* did not grant the preliminary injunction because crimes were implicated. In that case, the complaint alleged that the defendants (husband and wife) committed certain acts, only some of which were criminal, and that both defendants were liable to the plaintiff. The trial court concluded that it was essential to prevent the defendants from dissipating joint assets when both were liable to the plaintiff, albeit under different theories. Therefore, the trial court granted a preliminary injunction to protect any proceeds from the sale of the defendants' real property. The key factor in *Walter* was not that one defendant committed criminal acts leading to civil liability and the other committed only civil wrongs. The crucial factor was the need to prevent both defendants from liquidating assets and making themselves judgment-proof.

¶ 14 In this case, Appellees have alleged that Appellants committed certain tortious acts that led to the injuries and deaths that form the basis for the complaint. As in *Walter*, Appellees also alleged that Appellants were in the process of liquidating their assets to make themselves judgment-proof. Instantly, the trial court concluded that there was no meaningful distinction to be made between the facts of this case and the circumstances at issue in *Walter*. It therefore entered a preliminary injunction consistent with the terms of the preliminary injunction we approved in *Walter*. It was proper for the trial court to seek

guidance from *Walter*, and it is appropriate for us to evaluate the trial court's actions under the same standards we applied in that case.

¶ 15 A preliminary injunction's purpose is to preserve the *status quo* and to prevent imminent and irreparable harm that might occur before the merits of a case can be heard and determined. *Walter*, 837 A.2d at 1209. A plaintiff seeking an injunction must establish that:

1) relief is necessary to prevent immediate and irreparable harm;

2) a greater injury will occur from refusing the injunction than from granting it;

3) the injunction will restore the parties to the status quo;

4) the alleged wrong is manifest and the injunction is reasonably suited to abate it; and

5) the plaintiff's right to relief is clear.

*Id.* A party seeking injunctive relief also must show that granting the request will not adversely affect the public interest. *Kessler v. Broder*, 851 A.2d 944, 947 (Pa.Super.2004), *appeal denied*, 582 Pa. 676, 868 A.2d 1201 (2005).

¶ 16 The trial court was well aware of this standard and applied it in the present case. *See* Trial Court Opinion, 11/9/06, at 13–14. As the trial court correctly noted, the party seeking an injunction is not required to prove that he will prevail on his theory of liability, but only that there are substantial legal questions that the trial court must resolve to determine the rights of the parties. *Id.* at 14 (citing *Walter*, 837 A.2d at 1209). On appeal, we examine the record to determine whether the trial court had reasonable grounds for its order. *Walter*, 837 A.2d at 1209. An appellate court will interfere with the decision of the trial court only if it is plain that no grounds exist to support

the decree or that the rule of law relied upon was "palpably erroneous" or misapplied. *Summit Towne Centre*, 828 A.2d at 1000.

¶ 17 The trial court has explained in great detail why it concluded that an injunction was necessary to prevent immediate and irreparable harm to Appellees that cannot otherwise be compensated adequately. The trial court found the likelihood to be "undeniably strong" that a jury will return a verdict well in excess of a million dollars in this case. Trial Court Opinion, 11/9/06, at 16. However, the record discloses that Appellants have only a million dollars in liability insurance applicable to the fire that caused the deaths by burning of a young mother and her child and the serious injury of a third individual. *Id.* Appellants do possess extensive real estate holdings in Pennsylvania, which the trial court found would be more than adequate to satisfy any verdict Appellees are likely to obtain against Appellants-but only if Appellants remain in possession of these assets at the time a judgment is entered. *Id.* at 16–17.

¶ 18 Appellants have responded that no proof supports the conclusion that they are selling properties for the purpose of dissipating assets. The trial court disagreed. The trial court concluded that the record discloses that Appellants sold almost forty percent of their real estate holdings in less than two years after the date of the fire. *Id.* At the hearing held on June 13, 2006, the trial court acknowledged that Appellants also sold properties before the fire occurred. N.T., 6/13/06, at 32–34. However, the trial court indicated that it was troubled by the number of sales that occurred *after the fire. Id.* at 34–35.

[Appellees] presented a print list obtained from the Delaware County Recorder of Deeds adducing [Appellants'] sale of properties since 1986. The list

evinced [Appellants'] sale of 23 parcels before the fire over a period of 17 years dating from June 10, 1986 through September 5, 2003, and of 15 parcels after the fire during a period of fifteen months dating from February 23, 2004 through May 15, 2006, or a month before the hearing. In other words, [Appellants] had sold approximately 40 percent of these assets in a little over two years [after the fire], whereas the sale of the remainder before the fire had consumed the better part of two decades.

Trial Court Opinion, 11/9/06, at 8 (citations omitted). The trial court also was concerned about the high value of the properties sold after the fire.

[S]ix of the fifteen properties sold after the fire were transferred during 2006 alone for $814,595.00. The list also demonstrates that [Appellants] realized $2,053,200.00 from post-fire sales of their properties from February 23, 2004 though December 13, 2005, and a grand total of $2,867,795.00 from February 23, 2004 though May 15, 2006. [Appellees] also presented evidence that the building in which the Decedents died and another of [Appellants'] properties are currently under agreements of sale totaling $325,800.00, which would bring [Appellants'] total realization on sale of their property assets to $3,193,595.00 since the time of the fire.

*Id.* (citations omitted).

¶ 19 Evidence presented at the hearing indicated that Appellants had listed an additional property for sale at an asking price of $209,900.00. *Id.* at 8–9. The trial court also noted that Appellees' presented evidence at the June 13th hearing indicating that Appellants owned three additional properties they failed to disclose, in violation of the trial court's orders. *Id.* at 9. Appellants characterize this omission as "inadvertent" and indicate that it has been cured and that it stemmed from an unexplained failure to list the properties on their "internal property schedule." Appellants' Brief at 20 n. 2.

¶ 20 The trial court was aware of the fact that Appellants attributed their real estate sell-off to "good business decision-making" in light of favorable conditions in the real estate market. Trial Court Opinion, 11/9/06, at 9. However, the trial court was unconvinced by Appellants' argument that they ought to be permitted to continue liquidating their assets without considering the irreparable harm that would result to Appellees should Appellants make themselves judgment-proof. Our scrutiny of the certified record has convinced us that the trial court's determinations in this regard are based on apparently reasonable grounds, and we find no grounds on which we could conclude that the trial court committed any abuse of discretion in this regard.[3]

¶ 21 The trial court was fully cognizant of the requirement that a plaintiff seeking preliminary injunctive relief must demonstrate that a greater injury will occur from refusing the injunction than from granting it. The crux of Appellants' argument on this point is that it is unconscionable to prevent them from running their business however they choose while Appellees' action is pending. The trial court has weighed and balanced the rights of both

**3.** We understand Appellants' argument based on *Kim v. Choi*, 2005 WL 1953037, 2005 Phila. Ct. Com. Pl. LEXIS 372 (filed August 8, 2005). However, we cannot agree with Appellants' position. First, this Court is not bound by a decision of a court of common pleas. Second, we find that the trial court correctly distinguished the ruling in *Kim* and properly concluded that it does not apply to the present case. *See* Trial Court Opinion, 11/9/06, at 14–15.

sets of parties and has concluded that a carefully crafted injunction is the only way to protect Appellees' right to actually collect a judgment if they prevail at trial, while protecting Appellants' right to run the business and reinvest or otherwise use the proceeds of any property sales. Trial Court Opinion, 11/9/06, at 15–17.

¶ 22 The trial court's grant of injunctive relief does not prevent Appellants from selling its real property or from using the proceeds to purchase new properties. *Id.* at 17. It does not create a cloud to title nor does it inject the trial court into the daily operations of Appellants' business. *Id.* It merely requires that *after any sale,* Appellants must place the *net proceeds* into a court-supervised interest bearing escrow account secured by Appellees' bond to replace any lost interest that otherwise might inure to Appellants' detriment. *Id.* The trial court clearly indicated that there would be a reasonable ceiling to the amount held in escrow and that Appellants would be free to petition for the release of funds so that their assets would not be tied-up irrationally. N.T., 6/13/06, at 48–49.

¶ 23 Appellants concede, as they must, that Appellees have the right to file suit against them under the Pennsylvania Wrongful Death and Survival Acts.[4] *See* Trial Court Opinion, 11/9/06, at 2 (discussing Appellants' claims before the trial court). However, Appellants challenge their liability for the fire in question and contend that, because discovery is not yet complete, a liability determination cannot be made and that Appellees will just have to accept the risk that a judgment-proof

verdict will be the result of their lawsuit. *Id.* at 4.[5] As the trial court noted, the damages to be awarded, if Appellees prevail, cannot be presently ascertained. Trial Court Opinion, 11/9/06, at 19. However, given the horrific deaths and injuries from the fire that gave rise to this lawsuit, the damages awarded could be very high. *Id.* We cannot disagree with the trial court's conclusion that permitting Appellants to proceed with the liquidation of their assets would "work an irreparable harm to [Appellees'] ability to recover the full measure of the damages incurred." *Id.*

¶ 24 If we accepted Appellants' argument in this regard, we essentially would be ruling that whenever a defendant contests liability, the trial court may not issue a preliminary injunction—when necessary to preserve the *status quo.* This would mean that a preliminary injunction could be entered only in cases in which all defendants acknowledge that they are at fault and are liable for the plaintiff's injuries. If this were the law of Pennsylvania, a preliminary injunction could issue only if summary judgment is appropriate. But if summary judgment were to be deemed proper, the trial court simply would grant it and there never would be any need for an injunction at all.

¶ 25 Appellants have combined their argument concerning the second and third elements that must be established before an appellate court may affirm a preliminary injunction. They contend that the preliminary injunction entered by the trial court in this case imposes an unfair and intolerable burden by preventing them

4.   42 Pa.C.S.A. §§ 8301, 8302.

5.   Appellants' argument that any judgment is speculative prior to the completion of discovery actually cuts in favor of Appellees. An injury is "irreparable," as that term is contemplated in the context of a preliminary in-

junction, if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard. *The York Group, Inc.,* 2007 PA Super 114, ¶ 19, 924 A.2d 1234.

from running their business in the accustomed manner. They also complain that the preliminary injunction changes, rather than preserves, the *status quo* between the parties because it places Appellees in a better position than they occupied before the injunction. However, that is not the proper "timing focus" for our attention. The relevant standard requires that an injunction must address the *status quo* as it existed between the parties before the event that gave rise to the lawsuit, not to the situation as it existed after the alleged wrongful act but before entry of the injunction. *Anchel*, 762 A.2d at 351.

¶ 26 Appellants already had altered the relative positions of the parties by liquidating approximately three million dollars of their assets after the fire but before the trial court held any hearings in this case. The disposition of the three million dollars realized from Appellants' property sales remains unaccounted in the record established as of the time of the second hearing. *See* Trial Court Opinion, 11/9/06, at 16–17. The trial court has not required Appellants to disclose how they used this money, but it is clear that they did not purchase new real property with the funds. The trial court has not ordered Appellants to enter bond in the amount of three million dollars nor has it required Appellants to turn assets in that amount over to the court. The trial court has simply directed that Appellants must preserve their remaining assets at a level reasonably calibrated to satisfy any judgment that is likely to be entered in this case. However, as the trial court so aptly noted, it is a difficult matter to provide precise predictions, "especially about the future." *See id.*, at 16 n. 5 (quoting Niels Bohr and Yogi Berra).

¶ 27 Appellants have not been precluded from listing and selling their properties, from reinvesting the net proceeds from any sales or from using the net proceeds in a manner consistent with their normal business practices. The trial court's injunction simply prevents Appellants from liquidating their properties for the purpose of hiding or dissipating assets. *Id.* at 15–17. As already discussed, Appellees have been required to post a bond sufficient to cover any loss of interest Appellants might experience by being required to escrow funds. We again note that the trial court clearly indicated it would establish a reasonable ceiling to the amount held in escrow and that Appellants are free to petition at any time for the release of funds so that their assets can be used to run their business and are not irrationally tied-up. N.T., 6/13/06, at 48–49.

¶ 28 Appellants next argue that the conduct the injunction seeks to restrain is not actionable because there is nothing wrong with "saving, investing and spending their money as they deem appropriate and within the confines of the law as applied to all persons." Appellants' Brief at 22. We agree with Appellants that there is nothing wrong with saving, investing or spending money in a lawful manner. However, that is not the issue in this case. Appellants have not cited to any authority, either statutory or decisional, that affords them a legal right to dissipate assets for the purpose of becoming judgment-proof. This is the conduct that the trial court's injunction prohibits, not the lawful conduct of running their business.

¶ 29 The fourth element that Appellees were required to prove in the trial court is that the alleged wrong is "manifest" and that the injunction is reasonably suited to abate it. Appellees' concern is that Appellants will sell off their most valuable properties and fail to reinvest the funds in new properties of comparable worth which will leave them in possession of only "junk" properties with a value insufficient to satisfy a judgment. N.T., 6/13/06, at 52–54.

The trial court has explained why it concluded that the need for the preliminary injunction was "manifest." Trial Court Opinion, 11/9/06, at 16–17. On appeal, it is Appellants' burden to demonstrate that the trial court's decision is not supported by "apparently reasonable grounds." *The York Group, Inc.*, 2007 PA Super 114, ¶ 34, 924 A.2d 1234. We cannot agree with Appellants that they have demonstrated that there are no apparently reasonable grounds for the trial court's determinations in this regard. Furthermore, as discussed more fully above, it is clear that the trial court balanced the rights of both parties and crafted its order as narrowly as possible to abate the problem.

¶ 30 The next question is whether Appellees' right to relief is "clear." For a right to be "clear," it must be more than merely "viable" or "plausible." *Anglo–American Insurance Company v. Molin*, 547 Pa. 504, 691 A.2d 929, 933–934 (1997). However, this requirement is not the equivalent of stating that no factual disputes exist between the parties. *All–Pak, Inc. v. Johnston*, 694 A.2d 347, 350 (Pa.Super.1997). We do not attempt to determine whether the party seeking the preliminary injunction is guaranteed to prevail because our review of a decision regarding a preliminary injunction does not reach the merits of the controversy. *Id.* The proper question is whether the party seeking the preliminary injunction produced sufficient evidence to show that "substantial legal questions must be resolved to determine the rights of the respective parties." *Id.* The trial court was well aware of the correct legal standard and has so stated in its opinion. Trial Court Opinion, 11/9/06, at 14. We agree with the trial court's resolution of this point.

¶ 31 The final element that Appellees were required to demonstrate to the trial court is that granting the preliminary injunction will not adversely affect the public interest. In this case, the trial court concluded that the public interest would not be negatively impacted by granting the preliminary injunction. *Id.* at 20. On appeal, Appellants have failed to show, as they were required to do, how granting the preliminary injunction negatively impacts the public interest. *The York Group, Inc.*, 2007 PA Super 114, ¶ 34, 924 A.2d 1234. As in *Kessler*, 851 A.2d at 953, we have no reason to believe that the preliminary injunction will adversely affect the public interest, and, thus, we have no basis on which we could disagree with the trial court's resolution of this issue.

¶ 32 We find that "apparently reasonable grounds" exist to support the trial court's decision to grant a preliminary injunction in this case. We see no indication of record that the trial court has committed either an abuse of discretion or an error of law in its rulings. We therefore affirm the order entered May 10, 2006, as modified by the order entered June 20, 2006.

¶ 33 Orders affirmed.